IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JESSICA NICOLE CATHEY, Personal
Representative/Administrator of the Estate
of JOSHUA WAYNE CATHEY, Deceased,

    Plaintiff,

v.                                                          Case No. 1:23-cv-01282-JDB-jay

CORECIVIC, INC., *et al.*,

    Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS AS TO PLAINTIFF'S FEDERAL CLAIMS
AND
REMANDING STATE LAW CLAIMS TO THE CIRCUIT COURT OF HARDEMAN
COUNTY, TENNESSEE

*INTRODUCTION AND BACKGROUND*

This wrongful death action was initially brought on November 29, 2023, in the Circuit Court of Hardeman County, Tennessee, by the Plaintiff, Jessica Nicole Cathey, as Personal Representative/Administrator of the Estate of Joshua Wayne Cathey, Deceased, against CoreCivic, Inc. and CoreCivic of Tennessee, LLC (the "CoreCivic Defendants"); Correctional Medicine Associates, P.C.; and CCA Health Services, LLC.[1] (Docket Entry ("D.E.") 1-1.) The case was removed to this Court on December 27, 2023, pursuant to 28 U.S.C. § 1441. (D.E. 1.) Before the Court is Defendants' motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (D.E. 19), to which

---

[1] According to the complaint, Correctional Medicine Associates, P.C., and CCA Health Services, LLC, are agents of the CoreCivic Defendants.

Plaintiff has responded (D.E. 23) and Defendants have replied (D.E. 25). The motion is now ripe for disposition.

*STANDARD OF REVIEW*

Rule 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The same review standard is applied to Rule 12(c) motions as to those filed under Fed. R. Civ. P. 12(b)(6). *Oakland Tactical Supply, LLC v. Howell Twp., Mich.*, 103 F.4th 1186, 1191 (6th Cir. 2024), *reh'g en banc denied*, 2024 WL 3434464 (6th Cir. July 8, 2024). Although Fed. R. Civ. P. 8(a)(2) requires only a "short and plain statement of the claim[,]" to "survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Stated differently, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim . . . more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted).

2

*FACTS ALLEGED IN THE COMPLAINT*

The following facts are alleged in the complaint.  Mr. Cathey (sometimes referred to as "Decedent") died on April 30, 2022, while he was incarcerated at the Hardeman County Correctional Facility in Whiteville, Tennessee ("HCCF"), which is operated and managed by the CoreCivic Defendants.  On the date of his death, he was in the facility's day room with other prisoners playing cards.  At some point, a shoving match broke out between Decedent and another prisoner.  The complaint alleges that, "[a]s the prisoners were shoving, Mr. Cathey passed out[ and] fell to the ground[.]"  (D.E. 1-1 ¶ 23.)  There was no prison staff in or near the day room at the time of the incident.  As he lay prostrate on the floor, some of the other inmates attempted to perform life-saving procedures while others tried to alert staff by yelling for help, banging on the windows of an empty guard office, and waving and throwing items at the security cameras.  Staff eventually appeared and Mr. Cathey was transported to a hospital.  He died of what was later determined to be methamphetamine toxicity.

*PLAINTIFF'S CLAIMS AND ANALYSIS*

In her complaint, Ms. Cathey asserts federal claims pursuant to 42 U.S.C. § 1983 as well as state-law claims.  Defendants seek dismissal of the complaint in its entirety.

<u>Federal Claims.</u>

*Section 1983 Generally*

Section 1983 "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  In order to state a claim under § 1983, a plaintiff must (1) "allege the violation of a right secured by the Constitution and laws of the United States"

3

and (2) "show that the alleged violation was committed by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

*Section 1983 Liability of a Municipal Defendant*

Even assuming Mr. Cathey's death arose from a constitutional violation on the part of the Defendants, Plaintiff has failed to sufficiently allege that the constitutional violation was committed by a person acting under color of state law.  The Defendants are private entities.  Private corporations which perform the traditional state function of operating prisons and providing medical services at such facilities act under color of state law for purposes of § 1983.  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Claims against such defendants are analyzed under the same rubric as those brought against municipalities.  *Id.* at 818.  Ms. Cathey does not dispute that the law of municipal liability applies to the Defendants.

A municipal defendant may not incur § 1983 liability for injuries inflicted by its employees or agents, or merely "because it employs a tortfeasor[.]"  *Kovalchuk v. City of Decherd, Tenn.*, 95 F.4th 1035, 1038 (6th Cir. 2024) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)), *petition for cert. docketed* (No. 24-70) (U.S. July 23, 2024); *see also Capen v. Saginaw Cty., Mich.*, 103 F.4th 457, 462 (6th Cir. 2024) ("§ 1983 does not impose *respondeat superior* liability on municipalities").[2]  Instead, liability attaches only for a municipality's "own illegal acts."  *Kovalchuk*, 95 F.4th at 1038 (quoting

---

[2]Although Plaintiff points to a debate among the circuits regarding whether private prison operators should be insulated from *respondeat superior* liability, she concedes that the law of the Sixth Circuit, which governs this matter, does not favor such liability.

4

*Connick v. Thompson*, 563 U.S. 51, 60 (2011)) (emphasis omitted).  This requires a plaintiff to connect the alleged unconstitutional injury to the execution of a "policy" or "custom" of the municipal defendant.  *Franklin v. Franklin Cty, Ky.*, ___ F.4th ___, 2024 WL 3823715, at *5 (6th Cir. Aug. 15, 2024) (quoting *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004)).  A plaintiff may reach the policy or custom showing by way of four different avenues:  (1) "the municipality's legislative enactments or official agency policies," (2) ratification of actions "by officials with final decision-making authority," (3) "a policy of inadequate training or supervision," or (4) a "custom of tolerance or acquiescence of federal rights violations."  *Id*, 2024 WL 3823715, at *4 (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).  The plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Kovalchuk*, 95 F.4th at 1038 (quoting *Bd. of Cty. Comm'rs of Bryan Cty. Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

Ms. Cathey does not advise the Court in her response as to which of the four methods of establishing a policy or custom she is pursuing.  From the Court's reading of the complaint, Plaintiff appears to rely on the third and fourth roads to recovery.[3]  The third—a failure to train or supervise—demands a showing that:  (1) "the training or supervision was

---

[3] Plaintiff makes no allegation whatever that Mr. Cathey's injury was the result of legislative enactments or official agency policies of Defendants.  To the extent the complaint invokes the second avenue, Plaintiff's allegations suggest, at best, that Defendants as a whole ratified any unconstitutional conduct that resulted in injury to the Decedent.  (*See* D.E. 1-1 ¶ 87 ("Defendants, through their failure to adequately train staff, allowed, condoned, and ratified this type of conduct at the [HCCF] where Mr. Cathey's civil rights were violated.")).  Such an allegation is "insufficient to establish the requisite degree of culpability" to sustain municipal liability.  *See Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (where plaintiff did not name a final decisionmaker but, rather, alleged that the defendant police department as a whole ratified officers' unconstitutional conduct, municipal liability had not been shown).

inadequate for the tasks performed," (2) "the inadequacy was the result of the municipality's deliberate indifference," and (3) "the inadequacy was closely related to or actually caused the injury." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)), *petition for cert. docketed* (No. 23-210) (U.S. Sept. 6, 2023).  The second prong of this showing—deliberate indifference—is most commonly shown "by pointing to a failure to act 'in response to repeated complaints of constitutional violations by its officers.'"  *Id.* (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020)).

In similar fashion, the fourth avenue—a custom of tolerance—requires the showing of "a clear and persistent pattern of illegal activity."  *Young v. Campbell Cty., Ky.*, 846 F. App'x 314, 331 (6th Cir. 2021); *see also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that the third and fourth avenues both require a showing of a pattern of misconduct).  A custom must be "so widespread, permanent, and well settled as to have the force of law."  *Wallace v. Coffee Cty., Tenn.*, 852 F. App'x 871, 876 (6th Cir. 2021) (quoting *Gale v. O'Donohue*, 751 F. App'x 876, 880 (6th Cir. 2018)).

To satisfy these requirements of prior instances of misconduct, it is not enough for a plaintiff to allege facts of her own case.  *See Thomas*, 398 F.3d at 434 (in showing "custom," the plaintiff cannot merely rely on the facts of her own case but must establish "several separate instances of the alleged rights violation"); *McClellan v. Cty. of Chippewa*, 634 F. Supp. 3d 404, 422-23 (W.D. Mich. 2022) (plaintiff's allegations of facts about his own case insufficient to establish the necessary pattern of constitutional violations to sustain a failure-to-train claim).  To do otherwise risks "collapsing the municipal liability standard into a *respondeat superior* standard."  *Thomas*, 398 F.3d at 434.

6

The complaint must "allege facts indicating *specific prior instances of similar alleged misconduct* by [defendant] against other potential claimants." *Tietz v. Corizon Health, Inc.*, Case No. 20-10814, 2021 WL 253885, at **7-8 (E.D. Mich. Jan. 26, 2021) (emphasis added); *see also Hester v. Chester Cty., Tenn.*, No. 1:24-cv-1034-STA-jay, 2024 WL 3641754, at *6 (W.D. Tenn. Aug. 2, 2024) (observing that a plaintiff must, to satisfy the pleading standards of *Twombly* and *Iqbal*, "show several separate incidents of the alleged rights violation"). The number of other discrete instances needed to demonstrate a "pattern" is context-dependent. *Franklin*, 2024 WL 3823715, at *6 (noting that the Sixth Circuit has previously held that five similar incidents over the course of three years were sufficient, whereas three instances of similar misconduct revealed in one police investigation were not).

The only allegation in the complaint that goes beyond Decedent's own case resides in Paragraph 92, which states:

> Because of all the facts and circumstances including past incidents at [HCCF], the Defendants knew or should have known that their training was inadequate and deficient and likely to cause injuries. In light of the fact that the [HCCF] has incarcerated overdosed and/or otherwise ill patients multiple times in the past, Defendants were on notice of the need for training regarding such prisoners and yet failed to properly train prison staff as to the proper manner to address such situations.

(D.E. 1-1 ¶ 92.) While it mentions "past incidents" and "overdosed and/or otherwise ill" inmates, the allegation offers no specifics of any previous incidents of constitutional injuries based on a failure to train and/or supervise or a custom of tolerance, including how many there might have been, when they occurred and to whom, or whether the factual circumstances of those instances were similar to those alleged in this case.[4] Accordingly, as

---

[4] The Court notes here that the complaint does not specifically aver that Decedent "overdosed" or was "otherwise ill." Plaintiff complains only that it was "ultimately determined" that he died of methamphetamine toxicity, and argues in her responsive brief

7

Plaintiff has failed to sufficiently allege liability of the Defendants under § 1983, her federal claims cannot withstand Rule 12(c) scrutiny and are hereby DISMISSED.[5]

State-Law Claims.

In light of its dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over her state-law claims. "The doctrine of supplemental jurisdiction, originally set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715[] (1966), [and] codified by 28 U.S.C. § 1367, . . . grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are 'so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). "The district court[] may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). In determining whether to do so, the court is to consider factors including "economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). "When all federal claims are dismissed before trial, the balance of considerations usually will point to

---

that she "has not had an opportunity to conduct discovery on the cause of death and Mr. Cathey's medical history." (D.E. 23 at PageID 179 n.7.) As the *Kovalchuk* court explained, a plaintiff cannot "use discovery to bridge the gap between a deficient pleading and the possibility that a claim might survive upon further investigation." *Kovalchuk*, 95 F.4th at 1041; *see also Iqbal*, 556 U.S. at 686 (when a complaint is deficient, a plaintiff is "not entitled to discovery").

[5]A failure-to-train-or-supervise claim may escape dismissal in a rare instance that does not require the plaintiff to show a pattern of misconduct. *Connick*, 563 U.S. at 64. In a "narrow range of circumstances, . . . the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the [municipal defendant] to fail to prepare officers for it" such that a single incident may suffice. *Ouza*, 969 F.3d at 287 (citing *Connick*, 563 U.S. at 63). However, Plaintiff has made no argument this case falls within that narrow range of circumstances.

dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel*, 625 F.3d at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Here, although a scheduling order has been entered and the matter set for trial, the Court has not invested significant time or gained significant insight in this action. Accordingly, the Court finds that its retention of the state-law claims would be improper.

## *CONCLUSION*

For the reasons articulated herein, Defendants' motion for judgment on the pleadings as to Plaintiff's federal claims is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendants on those claims and remove the trial and related settings from the Court's calendar. Further, as the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, they are REMANDED to the Circuit Court of Hardeman County, Tennessee.

IT IS SO ORDERED this 20th day of August 2024.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE
